**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>Mark Steven Rosenblum, et al.<br><br>    Debtors.<br>_____<br><br>Rangen, Inc.,<br><br>    Appellant,<br><br>vs.<br><br>Mark Steven Rosenblum, et al.,<br><br>    Appellees.<br>_____ | No. CV-06-384-PHX-FJM<br><br>**ORDER** |

### I. Background

Rangen, Inc. ("Rangen") is an Idaho corporation that produces shrimp feed. Maritech S.A. de C.V. ("Maritech") was a Mexican company that farmed shrimp. Mark Rosenblum ("Rosenblum") was a founder and shareholder of Maritech, and was primarily responsible for its relationship with Rangen. Margaret Rosenblum was also a shareholder in Maritech, but her involvement was limited.

For many years beginning in 1991, Rangen met Maritech's feed needs. From 1999 through 2001, Rangen sought personal financial statements and personal guarantees from Rosenblum for Maritech's feed debts, either because they were necessary for participation in a United States Department of Agriculture ("USDA") loan guarantee program, or because of concern due to payment delinquencies. At either event, Rangen received the statements

and guarantees, and continued to provide feed on credit. Maritech ultimately failed to meet its debt obligations to Rangen, and the outstanding debt and interest exceeds $2 million.

On July 2, 2003, Rangen sued Maritech in the United States District Court for the Southern District of New York for non-payment of debt. On August 22, 2003, that court entered a default judgment for the amount owed. Having guaranteed the debt, it would appear that Rosenblum would also be liable for that amount. However, on December 26, 2002, the Rosenblums filed for bankruptcy in the United States Bankruptcy Court for the District of Arizona.

To avoid the discharge of Rosenblum's debt, Rangen filed an adversary action in the Bankruptcy Court pursuant to various subsections of 11 U.S.C. §§ 523 and 727, which exempt certain debts from discharge. At a trial to the court, the Rosenblums moved for judgment on partial findings pursuant to Rule 52(c), Fed. R. Civ. P. The court granted the motion as to all claims except that arising under § 523(a)(2)(B), which it characterized as the crux of the dispute. Following trial, the court found in favor of the Rosenblums on the remaining claim. Rangen appeals the Bankruptcy Court's decisions as to claims under §§ 523(a)(2)(B) and 727(a)(2), (3) and (4). We have before us the opening brief, the answer, and the reply.

## II.  11 U.S.C. § 523(a)(2)(B) Claim

Rangen contends that Rosenblum should not be discharged from his debt because he fraudulently induced its issuance with erroneous financial statements. See 11 U.S.C. § 523(a)(2)(B). To avoid discharge, Rangen must prove A) that the debt was obtained by use of a written statement that is materially false with respect to Rosenblum's financial condition; B) that Rangen reasonably relied upon the statement; and C) that Rosenblum caused the statement to be made or published with the intent to deceive. Id. The trial court concluded that although the financial statements contained errors, the errors were immaterial, were not relied upon or not reasonably relied upon, and were not intended to deceive. We review these factual findings for clear error. See Candland v. Ins. Co. of N. Am. (In re Candland), 90 F.3d 1466, 1469 (9th Cir. 1996) (citations omitted).

### A. Materiality

It is undisputed that Rosenblum provided Rangen with written financial statements. Trial Exs. 21, 26, 32, 33. It is also undisputed that those financial statements were inaccurate because they overstated Rosenblum's personal net worth by approximately $1 million.

Each of the disputed financial statements were issued during or after 1999 and show that Rosenblum held over $1.4 million of stock in Maritech. It is undisputed that at the time those statements were issued, Rosenblum did not hold that quantity of stock in Maritech; he held it in Sea Marine, Ltd. ("Sea Marine"), described by the parties as the parent company and the holding company for Maritech. Furthermore, it is undisputed that at the time the statements were issued, Rosenblum had pledged the Sea Marine stock to Beretta, Ltd. ("Beretta"). The financial statements show $480,000 in liabilities for stock pledges, and it is undisputed that this sum reflects only a percentage of the pledged stock. Rosenblum concedes that the statements should have reflected his entire holding of Sea Marine stock, valued at approximately $1.4 million. Accordingly, the statement over-represents Rosenblum's net worth by the difference between the declared Maritech stock assets and the declared pledge liability, or approximately $1 million.

Rangen, however, contends that the Sea Marine stock is bearer stock, and because Beretta was the bearer of that stock following the stock pledge, the financial statements should not have identified any assets in Maritech or Sea Marine stock. Also, there should have been no stock pledge liabilities because Rosenblum held no stock in Maritech or Sea Marine to pledge. Removing the allegedly incorrect asset entry, approximately $1.4 million, and liability entry, $480,000, Rosenblum's reported net worth is reduced by approximately $1 million. Therefore, at all events, the parties agree that the financial statements over-represented Rosenblum's net worth by approximately $1 million.

The parties disagree, however, as to whether that error is material. "Material misrepresentations . . . are substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision [to extend credit]." Candland, 90 F.3d at 1470. The trial court concluded that the error was not material, relying substantially upon Rangen's expert

1   witness, J. Dale Belt.  Belt concluded that Rosenblum's adjusted net worth was
2   approximately $5 million during the period at issue, significantly less than the $10-14 million
3   reported. Trial Tr. of Dec. 2, 2005 at 157. Assuming that Rangen knew at the time that
4   Rosenblum had only approximately $5 million in net worth, Belt also concluded that it would
5   have been reasonable for Rangen to have extended credit as it did because the parties had a
6   long-standing relationship, the USDA guaranteed 65 percent of the debt, and approximately
7   $5 million is more than double the funds necessary to cover the total risk of loss. Id. at 158-
8   59. Accordingly, the trial court concluded that Rosenblum's error would not generally affect
9   a lender's decision to extend credit.

10   Although Rangen urges us to conclude that the trial court clearly erred as to
11   materiality, it fails to address that court's reasoning. Instead, Rangen directs us to its
12   representative's statement that Rangen considered the "information contained on the May
13   1999 and June 2000 financial statements material." Trial Tr. of Dec. 1, 2005 at 70. Without
14   more, this evidence with regard to the financial statements as a whole cannot show that the
15   $1 million error was material to Rangen's decision to extend credit, nor can it show whether
16   the error would generally affect a lender's decision to extend credit.

17   Although the financial statements include several asset entries, the primary entries are
18   for Maritech and the Super Shrimp Group, a group of shrimp farming entities in which
19   Rosenblum declared to own between $8 and $13 million in stock. Rangen directs us to the
20   statement of Kevin Mindock, who was Rangen's credit manager and primary analyst of the
21   Maritech credit at the time, that Rangen did not rely upon Rosenblum's holdings in the Super
22   Shrimp Group in determining Rosenblum's creditworthiness. This is relevant because if we
23   ignore the Super Shrimp Group assets, the Maritech stock forms a much larger percentage
24   of Rosenblum's net worth, and the error is more likely to be material. Although Rangen
25   contends that the declared Super Shrimp Group asset entries are false, it does not challenge
26   them on appeal. Moreover, Rangen's own expert testified that Rosenblum had a net worth
27   of approximately $5 million, which takes into consideration part of the reported Super
28

Shrimp Group assets. Trial Ex. 76. Therefore, we cannot assume that a lender would have ignored Rosenblum's Super Shrimp Group assets in its credit decision.

Rangen also contends that Rosenblum materially erred by reporting his stock as Maritech stock rather than as Sea Marine stock. However, Sea Marine is the parent company of Maritech, and Rangen fails to compare these two entities, and thereby fails to identify the importance of this distinction to a potential creditor.

Rosenblum reported personal net worth of between $10 and $14 million in his personal financial statements. The fact that these figures are overstated by approximately $1 million would not generally affect a lender's decision to extend approximately $2 million in credit. The overstatement is substantial, but we cannot conclude that the trial court's conclusion that it is immaterial is clearly erroneous.

**B. Reliance**

The trial court concluded that "Rangen's decisions to extend credit from 1999 forward had everything to do with Maritech's . . . history of payments rather than any reliance whatsoever on the Rosenblum financial statements." Memorandum Decision at 18. The court relied upon inferences drawn from the entirety of the parties' relationship. Specifically, the court relied upon two Rangen documents, written by Mindock in 2001 and 2002 respectively, that discuss Rangen's relationship with Maritech and options for extending credit. Trial Exs. B, MM. Neither references Rosenblum's personal financial statements as a reason for extending credit, and the document written in 2002 states that with regard to the decision to extend credit to Maritech in 1999, "Maritech's payment history was pivotal." Trial Ex. B at 2. The court also relied upon expert witness James Morgan's conclusion that Rangen could not have relied upon the personal financial statements because it did not fully inquire into the stock pledge lines in the statements, and did not seek the statements until eight years into its relationship with Maritech, which is when the USDA guarantee program began.

Rangen contends that the trial court's decision is clear error, but fails to address Morgan's conclusions. In an effort to dispute the probative value of trial exhibits B and MM,

- 5 -

1 Rangen directs us to Mindock's conclusory statements that it relied upon the personal
2 financial statements. Trial Tr. of Dec. 1, 2005 at 120-21. In light of the contradictory
3 evidence, this alone cannot cause us to conclude that the underlying decision is clearly
4 erroneous.

5       The trial court also concluded that even if Rangen relied upon Rosenblum's
6 statements, that reliance was unreasonable. Rangen relied solely upon Rosenblum's stock
7 in Maritech when considering whether to extend credit, but as Morgan concluded, it is
8 unreasonable to rely upon stock assets of the company to which one is extending credit as
9 a guarantee of payment on that credit. Trial Tr. of Dec. 2, 2005 at 19. That is, if Maritech
10 were unable to pay its debts, Rangen would be unlikely to recover from Rosenblum's injured
11 Maritech stock. Rangen contends that this conclusion is clear error, but altogether fails to
12 address the court's rationale. The trial court's conclusion is sound, is supported by the
13 evidence, and is therefore not clearly erroneous.

### C. Intent to Deceive

15       The trial court concluded that Rosenblum did not intend to deceive Rangen. It relied
16 upon evidence that Rosenblum had always submitted documentation and clarification upon
17 request over the course of his 11-year relationship with Rangen, and that Rangen did not seek
18 to clarify any error in the financial statements.

19       Rangen contends that Rosenblum's intent to deceive is evidenced by the fact that he
20 inaccurately reported his stock as Maritech stock in the financial statements to Rangen, but
21 accurately reported his stock as Sea Marine stock in a credit application to Bank of America.
22 As explained above, Rangen fails to identify the importance of the distinction between Sea
23 Marine stock and Maritech stock to a potential creditor. Moreover, Rosenblum explained
24 that he believed that the company names were used interchangeably and because Rangen was
25 familiar with the name Maritech, he continued to refer to the stock as Maritech stock for
26 purposes of his dealings with Rangen. Trial Tr. of Jan. 6, 2006 at 12-14. That explanation
27 is consistent with the financial disclosures; Rosenblum only declared stock in Maritech. He

1   did not attempt to have the stock double counted by also declaring stock in Sea Marine. The
2   trial court found Rosenblum's explanation credible, and so do we.

3   Rangen also contends that Rosenblum's failure to represent the full sum of his stock
4   pledge to Beretta shows his intent to deceive. However, Rosenblum explained his calculation
5   of the incomplete figure, and that his error was premised on his misunderstanding of the
6   nature of his liability under the stock pledge agreement. Id. at 163-65. Rangen sets forth no
7   reason for us to doubt Rosenblum's explanation, and therefore we have no reason to conclude
8   that the underlying decision is clearly erroneous. For all of these reasons, we affirm the
9   decision of the trial court as to Rangen's 11 U.S.C. § 523(a)(2)(B) claim.

### III.  11 U.S.C. § 727 Claims

11  Rangen also contends that, pursuant to 11 U.S.C. §§ 727(a)(2), (3) and (4), Rosenblum
12  should not be discharged from his debt due to improprieties associated with the bankruptcy
13  action. The trial court granted judgment on partial findings for Rosenblum on these claims
14  pursuant Rule 52(c), concluding that "the evidence was very weak . . . and simply did not rise
15  to the preponderance required to deny the[] debtors their entire discharge." Trial Tr. of Jan.
16  6, 2006 at 107. Rangen appeals, contending that the trial court erred with regard to the
17  applicable law and its factual conclusions. We review the conclusions of law de novo and
18  the findings of fact for clear error. See Sepulveda v. Pac. Mar. Ass'n, 878 F.2d 1137, 1139
19  (9th Cir. 1989); Fed. R. Civ. P. 52 advisory committee note (1991).

### A.  Conclusions of Law

21  Rangen contends that "[t]he trial court erred when it held that it is up to the
22  bankruptcy trustee to figure out what assets the Rosenblums may have." Reply at 10. This
23  contention fails because it is raised for the first time in the reply and therefore the appellees
24  did not have a fair opportunity to respond. Furthermore, the contention fails because it
25  misrepresents the trial court's conclusions. The trial court concluded that it was sufficient
26  for Rosenblum, who believed that his stock assets were valueless because the net worth of
27  the related company was negative, to declare a value of zero on his bankruptcy filings. The
28  court then stated that "[t]he trustee and all creditors were free at that point to pursue that asset

- 7 -

if they felt that it had value to the estate." Trial Tr. of Jan. 6, 2006 at 98-99. However, the trial court did not conclude that it is the trustee's burden to unearth the assets of the debtor. We therefore reject Rangen's contention that the trial court erred as a matter of law.

### B.  11 U.S.C. § 727(a)(2) Claim

A debtor will not be discharged from a debt if:

> with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under [Title 11], [the debtor] has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of filing of the petition.

11 U.S.C. § 727(a)(2). Rangen sets forth a laundry list of allegations as to finances that were not declared on the bankruptcy petition. It then concludes that Rosenblum's actions meet the § 727(a)(2) requirements. Rangen insufficiently addresses each of the allegations. Furthermore, it fails to address the trial court's conclusion that the undisclosed assets belong to the various corporate entities, and not to Rosenblum. Finally, it sets forth no contention as to how the alleged omissions and actions demonstrate an "intent to hinder, delay, or defraud a creditor." We therefore reject Rangen's contention that the trial court's decision is based upon clear error.

### C.  11 U.S.C. § 727(a)(3) Claim

A debtor will not be discharged from a debt if he "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under the circumstances of the case." 11 U.S.C. § 727(a)(3). "In order to state a prima facie case under section 727(a)(3), a creditor objecting to discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." Lansdowne v. Cox (In re Cox), 41 F.3d 1294, 1296 (9th Cir. 1994) (quotation omitted). Of the list of errors alleged, the only allegations that appear to relate to the failure to disclose records are that stocks in

- 8 -

Fairfax and Sea Marine were not turned over to the bankruptcy estate. <u>Opening Brief</u> at 15. Rangen does not contend that the alleged failures made it impossible to ascertain Rosenblum's financial condition and material business transactions. We therefore reject Rangen's contention that the trial court's decision is based upon clear error.

### D.  11 U.S.C. § 727(a)(4) Claim

A debtor will not be discharged from a debt if he:

> knowingly and fraudulently, in or in connection with the case (A) made a false oath or account; (B) presented or used a false claim; (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or (D) withheld from an officer of the estate entitled to possession under [Title 11], any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

11 U.S.C. § 727(a)(4). Again, Rangen insufficiently addresses each of the numerous allegations. Moreover, Rangen fails to set forth any contention as to how Rosenblum committed these errors "knowingly and fraudulently." Therefore, we reject Rangen's contention that the trial court's decision is based upon clear error.

### IV.  Conclusion

For these reasons, **IT IS ORDERED AFFIRMING** the judgment of the Bankruptcy Court.

DATED this 6th day of July, 2006.

_____
Frederick J. Martone
United States District Judge